UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BRASLEY, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF STOCKTON, et al.,<br><br>        Defendants. | No. 2:20-cv-01967-JAM-CKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This Court has previously stated that it "does not take lightly that '[o]ur country is now in the midst of a serious examination of the violations of due process and equal protection rights of Black Americans'" and has recognized that "the burden of aggressive and intrusive police action falls disproportionately on African-American . . . males." Weaver v. City of Stockton, 2020 WL 5763763 at *6 (E.D. Cal. Sept. 28, 2020) (internal citations omitted). Yet, the Court also acknowledged in Weaver that what may shock the Country's conscience – "to have Black Americans singularly threatened with grave bodily injury . . . [by] police who are charged to protect and serve all Americans" – does not always shock the conscience

1

by substantive due process standards.  Id.

This Court is bound by the demanding legal standard for substantive due process claims.  Accordingly, when presented with a motion to dismiss claims based on substantive due process violations, as it was in Weaver, and is now in the present action against the City of Stockton, the Court must apply this demanding standard.

Before the Court is the City of Stockton, Patrick Frondo, Abel Hinojos, and Daniel Burke's ("Defendants") Motion to Dismiss Plaintiffs' second claim for loss of familial association in violation of the Fourteenth Amendment.  Mot., ECF No. 6.  Kevin Brasley, Antonia Brasley, Preston Gregory, Tomia Gayles Sagote, Herman Gayles, Kevin Brasley Jr., Antonio Brasley, Kenneth Brasley, Isaac Brasley, Antevin Brasley, Mary Bryant, and Kevousie Brasley ("Plaintiffs") opposed.  Opp'n, ECF No. 11.  Defendants replied.  Reply, ECF No. 12.  For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.[1]

I.   BACKGROUND

On September 20, 2019, the Stockton Police Department received a 911 call about a domestic violence incident at the apartment complex where Plaintiffs Kevin Brasley, his wife Antonia, and several of their children lived.  Compl. ¶¶ 11, 12, ECF No. 1.  The description of the suspect given to the officers was: black male around 30 years old, about 5'4 and 135 pounds,

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 9, 2021.

2

dark complexion, bald and clean-shaven, and wearing a blue shirt. Id. ¶ 13. Officers Frondo and Hinojos were dispatched to investigate. Id. ¶ 14. The officers' presence at the apartment complex drew a crowd of twenty to thirty spectators. Id. After speaking with the victim, the officers confirmed the suspect's physical description. Id. ¶ 15. However, because the suspect had fled the complex, the officers did not make an arrest and left. Id. ¶ 16. When the suspect returned shortly thereafter, the officers were again dispatched. Id. ¶¶ 16, 17. Among the crowd still gathered outside were Plaintiffs Kevin Brasley, his wife, and their sons, Isaac, Kenneth, Antevin, and Antonio. Id. ¶ 19.

When Officer Frondo exited from his patrol vehicle, he singled out Kevin Brasley and ordered him to walk over to the vehicle. Id. ¶¶ 21, 23. Other than being a black male, Mr. Brasley did not match the description of the suspect; at the time, Mr. Brasley was 49 years old, about 5'9 and 190 pounds, with gray hair and gray facial hair, a light complexion, and wearing a black shirt. Id. ¶ 22.

Mr. Brasley complied with Frondo's orders, putting his hands on the hood of the patrol car and spreading his feet. Id. ¶¶ 23, 24. As Frondo was searching Mr. Brasley's body, Frondo tripped and fell to the ground, pulling Brasley down to the ground with him. Id. ¶¶ 25, 26. Frondo rolled himself on top of Brasley, his body covering Brasley's face and preventing him from breathing. Id. ¶ 27. When Frondo did not stand up right away, Brasley raised his hands in the air to show he was not resisting or posing any threat and turned his head to the side in order to

3

breathe. Id. ¶¶ 28, 29.  Officer Hinojos headed quickly over to where Brasley and Frondo remained entangled on the ground and hit Mr. Brasley's raised arm with a baton. Id. ¶ 29.  The baton strike broke a bone in Mr. Brasley's left arm. Id.

Meanwhile, Officer Burke had arrived, as spectators were yelling that the police had the wrong person. Id. ¶¶ 30, 34-36.  The victim of the domestic violence incident specifically told Burke that the officers had the "wrong man," but Burke did nothing. Id. ¶ 36.  Brasley was arrested, id. ¶ 37, taken first to the San Joaquin General Hospital, id. ¶¶ 39-40, then to the San Joaquin County Jail where he was held overnight, id. ¶¶ 41-49.

Kevin Brasley now brings this Section 1983 action on behalf of himself, his mother, his wife, and his nine children. See Compl.  While the complaint contains nine causes of action, the present Motion concerns only the second: a Fourteenth Amendment Substantive Due Process Claim for Familial Association brought by all Plaintiffs against Officers Burke, Frondo, and Hinojos. Compl. ¶¶ 58-66.  Defendants move to dismiss the second cause of action, and in turn dismiss Plaintiffs Mary Bryant, Preston Gregory, Tomia Gayles Sagote, Herman Gayles, Kevin Brasley Jr., and Kevousie Brasley, from this action.  Mot. at 9.

## II.   OPINION

### A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  Courts must

4

dismiss a suit if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard requires "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "At this stage, the Court "must accept as true all of the allegations contained in a complaint." Id. But it need not "accept as true a legal conclusion couched as a factual allegation." Id.

    B.   Analysis

As a threshold matter, Defendants characterize their leading argument as one about standing. Mot. at 5; Reply at 2-3. However, upon review of the "standing" sections of Defendants' Motion and Reply, the Court finds that Defendants' arguments though couched as standing arguments, are more properly considered as failure to state a claim arguments. For instance, Defendants argue in the "standing" section of the Motion: "there has been no deprivation of life, liberty or property necessary to state a valid substantive due process claim." Mot. at 5. (emphasis added). Accordingly, the Court finds it appropriate to consider Defendants' "standing" arguments as part of the 12(b)(6) analysis below.

Defendants argue that Plaintiffs fail to state a Fourteenth Amendment substantive due process claim for loss of familial association and thus this claim must be dismissed. Mot. at 5-8;

5

Reply at 2-3.  Plaintiffs insist that as the wife, mother, and children of Kevin Brasley, respectively, Antonia Brasley, Mary Bryant, Preston Gregory, Tomia Gayles Sagote, Herman Gayles, Kevin Brasley Jr., Antonio Brasley, Kenneth Brasley, Isaac Brasley, Antevin Brasley, and Kevousie Brasley have a constitutionally protected liberty interest in the companionship and society of their husband, son, and father.  Opp'n at 6-7.  They allege that Defendants violated this interest, rendering Kevin Brasley "physically and emotionally unable to provide the same level or quality of companionship, comfort, and society to his mother and wife and children than before he was injured."  Compl. ¶ 64.  The two specific examples of loss of familial association Plaintiffs have pled are: (1) Kevin Brasley has been "physically unable to assume his pre-injury role in executing and leading the family cookouts like the family enjoyed 2-3 times per month before he was injured"; and (2) Kevin Brasley has been "unable to take his sons on their nearly annual fishing trip, or help them work on their homes and cars, or get out of the house for birthday parties and holiday get togethers."  Id.

Under the Fourteenth Amendment, official conduct that "shocks the conscience" in depriving close family members of a liberty interest in the companionship and society of a family member is cognizable as a violation of due process.  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotations and citations omitted).  The Ninth Circuit has instructed: "In determining whether [the officer's conduct] shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical.

6

1  Where actual deliberation is practical, then an officer's
2  'deliberate indifference' may suffice to shock the conscience.
3  On the other hand, where a law enforcement officer makes a snap
4  judgment because of an escalating situation, his conduct may only
5  be found to shock the conscience if he acts with a purpose to
6  harm unrelated to legitimate law enforcement objectives." Id.;
7  see also Estate of Ozuna v. Cty. of Stanislaus, 392 F.Supp.3d
8  1162, 1176 (E.D. Cal. 2019).
9      The parties dispute which of these two standards, deliberate
10 indifference or purpose to harm, applies. Opp'n at 4-5; Reply at
11 3-4.  However, the Court finds it unnecessary to resolve this
12 dispute because under either standard, Plaintiffs have not
13 alleged facts from which it could plausibly find that Defendants'
14 actions against Kevin Brasley shocked the conscience.  Here,
15 Plaintiff's allegations – even the most egregious ones (1) that
16 Officer Frondo singled Mr. Brasley out despite the fact he did
17 not match the description of the suspect other than generally
18 being a black male, Compl. ¶¶ 21-23; (2) that Officer Hinojos
19 swung a baton and broke Mr. Brasley's arm despite the fact he was
20 not resisting and merely trying to breathe as Officer Frondo
21 remained on top of him, id. ¶¶ 27-29; and (3) that Defendants
22 arrested Mr. Brasley despite being informed by many onlookers,
23 including the victim, that they had the wrong guy, id. ¶¶ 30, 34-
24 36 – simply do not rise to the level of a substantive due process
25 violation under the settled caselaw.  Likewise, Plaintiffs'
26 allegations regarding the loss of familial association, id. ¶ 64,
27 come up short.  Indeed, the authority Plaintiffs cite to confirms
28 as much.  Opp'n at 7 (citing to Lee v. City of Los Angeles, 250

F.3d 668 (9th Cir. 2001)). In Lee, Los Angeles Police officers arrested plaintiff-son, who was severely mentally disabled such that his plaintiff-mother had been appointed as his conservator, then proceeded to mistakenly identify him as a fugitive wanted by the New York Police and extradite him to New York where he was wrongfully incarcerated for two years. Id. at 677-678. His mother spent those two years searching for him. Id. The Ninth Circuit found these allegations sufficient to state a loss of familial association claim. Id. at 686.

The Court agrees with Defendants that the facts of Lee are "oceans apart" from the allegations here. Reply at 3. Here, unlike in Lee, there is no allegation that Mr. Brasley had a mental incapacity that Defendants ignored, no allegation that Mr. Brasley was wrongfully incarcerated for two years, and no allegation that his family members did not know where he was for two years and were deprived of his companionship for that period of time. Rather, Mr. Brasley was held in custody at the San Joaquin County Jail for one night. Compl. ¶¶ 41-49. While the Court takes as true the allegation Mr. Brasley is now "physically and emotionally unable to provide the same level or quality of companionship, comfort, and society to his mother, wife and children than before he was injured," id. ¶ 64, this is simply not enough to state a claim, even under Plaintiffs' own cited caselaw. It bears repeating that substantive due process standards are demanding and do not impose liability "whenever someone cloaked with state authority causes harm." Weaver, 2020 WL 5763763 at *6 (internal citations omitted).

Because the caselaw requires far more than what Plaintiff

8

has alleged here, the Court DISMISSES Plaintiffs' Fourteenth Amendment familial association claim.

### C. Leave to Amend

The Court need not grant leave to amend where amendment would be futile. Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049 (9th Cir. 2006). As discussed above, what has been alleged by Plaintiffs here is far from what the caselaw requires to state a claim. Further, in opposition, Plaintiffs did not proffer any facts that might lead the Court to believe Plaintiffs could add allegations to avoid dismissal on 12(b)(6) grounds. See Opp'n. Accordingly, the Court finds amendment would be futile and DISMISSES Plaintiffs' second claim with prejudice.

### III. ORDER

For the reasons set forth above, the Court GRANTS WITH PREJUDICE Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Dated: February 12, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE